## Purcell, Appellant, *v.* Metropolitan Life Insurance Company.

Argued December 1, 1938. Before Kephart, C. J., Schaffer, Maxey, Drew, Linn and Stern, JJ.

*Arthur S. Arnold,* with him *Benjamin Horrow,* for appellant.

*Carroll R. Wetzel,* with him *Owen B. Rhoads, Dechert, Smith & Clark,* and *Harry Cole Bates,* for appellee.

Opinion by Mr. Justice Stern, January 9, 1939:

This appeal is concerned with questions as to the admissibility of evidence, arising in a suit on a policy of life insurance. The policy was dated July 2, 1931, and provided for premiums payable in semi-annual installments of $55.45 each on the second days of January and July of each year, the first premium being paid when the policy was issued. When the second premium fell due on January 2, 1932, payment was not made, but in the following March the insured obtained a reinstatement of the policy under an arrangement whereby the premiums were to be paid quarterly; at the same time he paid the company $28.25 as the past due quarterly payment of January 2. The next payment in the same amount became due on April 2. The insured died on June 1, 1932. Suit being brought on the policy, the defense was that the April 2, 1932, quarterly premium had

not been paid. That was the only issue in the case. The jury found a verdict for defendant on which judgment was entered.

The policy was taken out at a district office of the company in Philadelphia, and it was there that the insured dealt with the company in regard to the payment of premiums. That office regularly sent its records of payments and nonpayments to the home office in New York, where the information was transferred to cards. The records received from the district office in the present case had been destroyed before the trial, and defendant offered the card record in evidence to prove that the April 2 premium had not been paid. Defendant produced as a witness its employee in charge of the clerks who kept these card records, and who testified as to the meaning of various markings on this particular card. For example, he explained that in the square or block marked July, 1931, the figures "7-11" meant that the premium for that month was paid on July 11; and that in the block marked January, 1932, the figures "1/4-3-19" meant that the quarterly premium due that month was paid on March 19. He further testified that the absence of any such figures in the block for April, 1932, indicated that the premium due April 2, 1932, had not been paid. He explained that a certain tick or check-mark in that block indicated that a notice had been sent to the insured in regard to the due date of that premium. Plaintiff did not object to the admission of the card itself in evidence, but only to the explanations made by defendant's witness as to the meaning of the notations thereon and as to the system of recording or bookkeeping employed by defendant.

Where a writing contains signs, characters, or technical terms, the meaning of which is not commonly known, or where it is in cipher or in a foreign language, in all such cases testimony as to its meaning may be received from one conversant therewith. Letters and their combinations in words are but mechanical representations

of ideas, and when a person chooses to employ for that purpose symbols which are not in the vernacular, such use may be explained so as to re-translate them into the mental conceptions they were designed to portray.

Plaintiff's objection to another ruling on evidence by the learned trial judge has more merit, and requires a reversal of the judgment. Under date of August 9, 1932, defendant wrote to the insured a letter having at the top a notation of the due date of premium on his policy as June 2, 1932, in the amount of $28.25. The letter stated that the policy had been reported for cancellation because of nonpayment of premium, and urged him to complete the enclosed application for reinstatement and return it to the company with the past due premium. The enclosed application blank also noted the premium due date as June 2, 1932, and contained the clause: "Application is hereby made for the reinstatement of the above stated policy which lapsed for nonpayment of premium due as stated above." The significance of the letter and of the suggested application was that neither intimated that the premium due April 2 had not been paid. Plaintiff offered this letter in evidence, but it was ruled out by the court on the ground that there was no evidence of any premium falling due June 2, the due dates of the quarterly premiums being January 2, April 2, July 2, and October 2. The date June 2 was doubtless a mistake, but was it intended for April 2 or July 2? Obviously, at the time the letter of August 9 was sent defendant had no official knowledge of the death of insured on June 1; indeed the card-record which it placed in evidence showed that the company marked the policy cancelled on August 15, 1932. The letter of August 9 may, therefore, have meant to refer to nonpayment of the premium of July 2, with a resulting implication that the April 2 premium had been paid and that the company was not making any claim therefor. The evidence indicates that that is not only a possible but the more likely conclusion to be drawn from

the letter.  The policy provided for a period of grace of thirty-one days in the payment of each premium, which would have made the April 2 premium finally due on May 3.  The manager of defendant's district office in Philadelphia testified that the policy automatically would lapse at that time, but that the company maintained also a "60-day list," and he explained this to mean that within the thirty days following the lapse of a policy "the insured has the right to sign a reinstatement form, which is a health form stating that he is in good health, and by paying the premium, and as a rule I would say that ninety-nine out of one hundred the company will accept them *without a medical examination,*" but if the reinstatement was not applied for within the sixty days "then it is cancelled officially" and "that is the final lapse."  As stated by the trial judge to the jury: "It was the custom of the defendant not to cancel lapsed policies from its books until an effort had been made to have the policy reinstated, which might be done in the next thirty days."\*  The thirty days after the lapse of the policy during which, according to that testimony, the company was accustomed actively to invite reinstatement, would, as far as the April 2 premium was concerned, have expired June 2, and yet the company wrote this letter on August 9 urging the insured to apply for reinstatement.  It is true that reinstatement was not precluded by the terms of the policy even after sixty days, evidence of insurability being produced satisfactory to the company, but, under the explanation given by defendant's witness as to the practice of the company, the probability was that the letter of August

----

\* In conformity with this practice as to an extra 30-day period during which reinstatement was invited, the district office would keep for that length of time after the lapse of the policy the receipt which was sent to it by the home office to give to the insured if he should pay the premium.  At the end of the sixty days after the due date of the premium this receipt would be returned by the district office to the home office if the premium had not been paid.

9 was not intended to apply to the premium of April 2, since in that case more than four months would have elapsed after the premium was due, but to the premium of July 2, since the letter was sent within the second 30-day period after the due date of that premium. Even though the letter was a mistake, it was not for the court to exclude it from evidence, but to allow the jury to consider it for what it was worth and to interpret it in the light of the other testimony and circumstances of the case. Whether a mistake or not, it was admissible as a declaration against interest, or at least might have been found to be such by the jury.

The judgment is reversed and a new trial awarded.